Good morning everyone. I don't hear any response. Our first case for argument today is going to be Armando, Carlos Armando Ortega v. Santa Clara County Jail. The first case on calendar Paul v. Garland has been submitted on Ms. Molloy. I can't hear her. Can you hear me your honor? Now I can. Okay great. Shall I proceed? Yes. Good morning your honors and may it please the court. Margaret Adama Molloy for plaintiff appellant Carlos Ortega. I would like to make time for rebuttal. Mr. Ortega has a decades-long history of severe mental illness. He has been civilly committed in Napa State Hospital since 2014 after he was deemed not guilty by reason of insanity because he was unable to understand the nature and the quality of his criminal acts. In January 2019, Mr. Ortega sued defendants under section 1983 for inflicting excessive force on Santa Clara County Jail about six years prior in December 2012. The district court dismissed Mr. Ortega's complaint based on his failure to prove with evidence his entitlement to tolling of the two-year limitations period. The district court erred and this error requires reversal for three reasons. First, the district court applied the wrong standard to evaluate a defendant's motion. Second, two viable grounds for timeliness make dismissal inappropriate here. And third, the defendant's reliance on Mr. Ortega's past litigation history is unavailing. I will address these arguments now in turn. A defendant is not required to plead around affirmative defenses. Rule 8 places the burden of pleading squarely on a defendant. Thus dismissal for failure to state a claim based on an affirmative defense is appropriate only if the plaintiff's complaint admits all of the ingredients of an impenetrable defense. In other words, if the plaintiff pleads himself out of court. And it's undisputed here that a statute of limitations defense is not impenetrable if the plaintiff might be entitled to tolling. You would agree, wouldn't you, though, that the allegations in the complaint made the statute of limitations issues stand out? Your Honor, I do agree that it made the statute of limitations issues stand out to the extent that certainly it was clear from the face of the complaint that six years had passed since the incident in question. Although I do not agree that the bar based on tolling was at all clear from the face of the complaint. Once the defendants raised the statute of limitations, though, and showed the litigation history, asked for notice of the litigation history, why was it improper for the district court to look at that litigation history? The litigation history, so I think that they're taking judicial notice of litigation history to prove up an affirmative defense undermines the pleading burdens established by the federal rules where the defendants are to prove up their affirmative defense before the plaintiff has even been required to prove, much less plead, the facts supporting his claim. And so in some ways it's like the defendants are inserting facts into the complaint, amending the complaint before the plaintiff has even had an opportunity to or excuse me, not an opportunity, but been required to plead those facts themselves. So I gather what you're saying is that once the district court took judicial notice of the litigation history, that accounting for those facts, it was air for the district court to conclude as a matter of law that equitable tolling was just not possible. That's right, your honor, and I think that my argument is twofold. I think as an initial matter, it might create issues to rely on judicially noticeable materials to prove up affirmative defenses. But I don't think that this court in this case has to rule that it's never, ever appropriate to take judicial notice on an affirmative defense or to defend because here the issue is narrower. It's not only that there were these judicially noticeable materials, it's also the inferences that the court drew from those judicially noticeable materials. The court took notice of the litigation history and not only took judicial notice of the fact of filings, in other words, that the plaintiff could litigate only in the most technical sense of the terms, but also inferred that the court could, or excuse me, that my plaintiff could, my client could litigate. We just lost you there for one second. Of course. I'll just finish my last point, which was just to say that the inference was, or the judicial notice was not only of the fact of the litigation, it was that an inference that he could ably litigate to protect his rights and competently protect his legal interests. And here, Mr. Ortega's complaint did not foreclose the possibility that he could establish either equitable or statutory tolling. Statutory tolling. So why couldn't the district court look at the evidence that he was competently litigating? That would require a finding of fact that is not appropriate at the motion to dismiss stage. The court cannot, in general, at a motion to dismiss stage, draw inferences against the plaintiff. And certainly looking at the litigation history and drawing the inference that it was competent and that he was rationally thinking about his claims without having a whole picture about what this plaintiff was experiencing, what other claims he might have available to him, and then drawing the judgment that he was rationally pursuing the claims that a reasonable person would have in his shoes, is an inference that is contrary to the non-moving party and never appropriate at this stage. And I think that a fact that makes this especially inappropriate here is that Section 352 of the California Code of Civil Procedure presumptively entitles litigants like Mr. Ortega, who are civilly committed to a psychiatric institution, to tolling under Section 352. And here, Mr. Ortega also submitted a psychiatric evaluation written just weeks before the incident in question that said he was, at that time, suffering from an ongoing persistent and severe mental illness. And I think, based on his commitment and based on the psychiatric evaluation, that at least would demonstrate for pleading purposes, if he had to carry that burden, an entitlement here to Section 352. And it was also not foreclosed under equitable tolling, which requires only timely notice, lack of prejudice to the defendant, and good faith and reasonable conduct. And this court has, you know, repeatedly reiterated that this standard is rarely met at the motion to dismiss stage. Would you like to save some time for rebuttal? Yes, your honor. Thank you. Okay, let's hear from the county. Can you hear me, your honors? Yes, we can. Good morning. May it please the court. My name is Michael Cerverian, and I represent the defendants in this case, correctional officers Alex Flores, David Malik, and Jason Diaz. At the outset, I just want to say that at the county, we don't nitpick on pro se litigation cases. We understand these cases seldom resolve quickly. We get it. We spend a lot of time working with pro se plaintiffs, and if they've been taken from the county facility to another facility, we continue to work with them at the new jail facility. I'm familiar with the liaison officers at San Quentin, at Salinas Valley State Prison. And these types of cases, um, when an inmate misses a deadline by a day or a week or a month, we don't do anything. We let it go. We try and work with the inmate who doesn't have email, is difficult to communicate with. But in this case, the length of the delay wasn't a day or a week or a month or a year. It was four years of delay. He waited nearly more than six years after he filed, after the incident, to file his complaint. So we crossed the threshold of, um, prejudice that it would be very prejudicial to put the defendants in this case through a memory test and to, um... But that's how, that's how tolling works, right? I mean, then they can have tolling. So the memories might fade, but isn't that always what tolling is? Um, yes, tolling is, um, always dealing with, um, with delay, and it does slow down the litigation. But it's also the reason that we have statute to limitation. We don't want to litigate stale claims if we can. And with respect to tolling, there are components of tolling, um, that the plaintiff in this case did not satisfy. Um, he did not, um, litigate his faith, his case in good faith. He... How can we tell that? How can we tell that from the face of the complaint? From the face of the complaint itself, we can, we can tell it in, in, in a couple of ways. Um, if you look at the attachments to the complaint, uh, he sought his medical records. He corresponded with the chief of the, of the jail, uh, and advised him that he was considering litigation. He requested an internal affairs report. Um, he did all of that within months of the litigation. And in the meantime, he filed two other lawsuits in 2013 and 2014, uh, that had to do with other alleged civil rights violations. But those other lawsuits weren't part of his complaint, right? You, you brought attention to those? I brought attention to those, but the, the other documents that I alluded to, um, the request for medical records, the correspondence from the plaintiff himself to the, to the chief of the jail, um, the grievances, the white cards, and the other documents, he, he, he attached to his complaint. How does California, how does California tolling work? Is it like a stop the clock? So he would need to, need to be competent for two whole years before his claim would be time barred, or does it work some other way? Um, there's a few mechanisms in state court, um, that deal with tolling. One of them is it can toll, um, your, if, if you're serving a criminal sentence for the, uh, underlying event, it can toll for, uh, up to two years. We don't really have that in this case because it would not have saved his claims anyway, the two year delay, um, it would not have mattered because, um, he was four years late. Um, we have equitable tolling, which the St. Francis case, um, discussed and the problem that he has there is that, um, it wasn't objectively reasonable and it wasn't subjectively, um, um, in good faith to the extent that at the outset, um, of the case, um, as he attached to his complaint, he was already, um, pursuing, uh, the possibility of litigation. So that second prong of reasonableness, the subjectively and good faith requirement, his efforts in seeking his medical records, submitting grievances and requesting an internal affairs investigation all within months of the incident demonstrate his subjective knowledge that he potentially had a lawsuit against the county. Oh, that sounds like you want the district court to make, or you're asking the district court to make factual determinations on a 12B6 ruling. That doesn't quite seem right. Well, it's, um, they're not factual determinations. I mean, I think Judge Gilliam at the, at the lower court simply relied on the fact that the plaintiff was able to, um, competently, um, file documents in his other cases, uh, file complaints in those litig- in those other cases and meet deadlines in those other cases. So he looked at- You're saying that what you're saying then is as a, as a matter of law, he can't satisfy any basis for tolling? I, I'm, I'm saying that the, that the court has- Well, that's what, that's what essentially what Judge Gilliam said, what the district court said. It's a matter of law. Correct. And that doesn't quite, that, that doesn't quite seem correct, at least not to me. Um, especially when Judge Gilliam further said that he failed to present evidence to rebut the 12B6 motion. Right. And he had, um, and, and, and obviously there's a litigation history between Judge Gilliam and, uh, Mr. Ortega. I think this was his third or fourth lawsuit. Um, and so, um, what, if anything, he read into that, I, I do not know. I do know that Mr. Ortega, um, also attached documents to his opposition and also attached documents in his motion for reconsideration. So- I'm not sure, I'm not sure I understood the answer to my question earlier. Um, even if he was, if those documents show that he was competent for a week, say, or two weeks during this period, is that enough under California law? Um, it's, yes. Um, under, under the, uh, under the statute, you don't have to be incapacitated, um, every day. Um, the, the requirement is, is, is really, is he capable of, uh, understanding the effects of his acts and capable of basically doing, doing business? And I think- But does he need to have been capable in that way for two years before the time would run? No, he doesn't have to be capable of that the entire time, he just has to be capable of it. And what case in California tells us that? Um, I'm sorry, I'm not, I'm not finding that right now, Your Honor. If we don't have something that tells us that, then how can we assume that, the fact that he filed something shows that he met the standard? Because of all of the documents that the court took judicial notice of and because of the documents that he attached to his complaint that show that he was lucid, that the medical records that he requested and the correspondence with the chief of the, of the facility, um, indicate that he was considering litigation and thinking about filing a lawsuit. I take it that all he had to do was file a, file a lawsuit to satisfy the statute of limitations, we're not talking about his ability to litigate. Right, all he had to do was file a lawsuit within the, within the two years and he filed lawsuits in two of his other cases during that same time frame. He was also transferred during that time period to a mental hospital at Napa State. And when inmates are transferred, it usually causes quite a bit of delay because they have to get set up at the new facility. So he was able to do that. Well, over what period were these documents filed? In other words, you know, from, from what point to what point? So the two lawsuits were filed in 2013, 2014. And then during that same time period, he, um, filed a notice of appeal, a most opposed emotion for summary judgment. Um, and, um, there were other filings that he judicial notice of your honor of making these other filings that we're talking about. I'm sorry, I didn't understand. I couldn't hear the first part of your question. What I meant was what was the period during which he was making these filings in terms of, I take it from the very beginning, he was asking for documents that suggested he was contemplating litigation. That's correct. And the other, any other documents indicating that he was at least competent to file a complaint over what period was it? What years were they? So most of the correspondence with the, um, with the jail facility was within six months of the incident. He was in transferred about a, in July of 2014 to, um, Napa state hospital. But after about six months of, of, of correspondence about this incident, there were, there was no further communication with the, with the jail about this case. In the meantime, he filed his other lawsuits. When you say in the meantime, that's what I wanted to know. What's the meantime, the meantime would have been, I believe 2014, uh, the 2014 period. Um, can't find it in the record right now, but it's, it's their documents that the court took judicial notice of, but he filed two lawsuits within the stat within two years of this, uh, this incident. Okay. Thank you. Your time is up. Let's hear from a rebuttal from the appellant. Yes, your honors. Um, so, uh, judge Freeland, um, to answer your question regarding the effect of equitable tolling, um, in California, it's my understanding, um, based on, and it's a case that defendant cited, um, in their brief Lansky V. Sentex homes, 31 Cal fourth three 63 at Penn site three 71. Um, it says in any event, equitable tolling pauses the running of the limitations period during the tolling event, the tolls interval, no matter when it took place is tacked onto the end of the limitations period. So, um, it's, it's our contention. Um, and although there, there is some case law, um, suggesting this rule might not be the same in the statutory context, um, at least for equitable tolling, the law is clear that, um, if our, if the paused during which, uh, in the intervening years, um, you know, and our, my client was suffering from, um, severe mental illness, even if, uh, the, the court filings could demonstrate some lucidity, um, some intervals of lucidity or even days long periods of lucidity. It does not mean that the face of the complaint forecloses, um, you know, equitable tolling. Um, and, and we also submit, it doesn't, uh, foreclose statutory tolling because, um, the cases where they found competency involved, uh, people managing 16 unit apartment buildings. And I don't think that that rises to the level here, but, um, I think that certainly on the equitable tolling, even if you had a period of lucidity, um, we still ask this court to reverse. Thank you very much, counsel. We appreciate your arguments this morning. The matter is submitted.
judges: PAEZ, FRIEDLAND, Korman